Brett Lewis, Esq.
brett@iLawco.com
LEWIS & LIN, LLC
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326

*Counsel for Plaintiffs Joseph C. Gargiulo and Michael Gargiulo*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH C. GARGIULO, MICHAEL GARGIULO, <br><br> *Plaintiffs*, <br><br> v. <br><br> KEEPSOLID INC., <br><br> *Defendant*. | Case No: <br><br> **COMPLAINT** <br><br> JURY TRIAL DEMANDED |

Plaintiffs Joseph C. Gargiulo and Michael Gargiulo (together, the "Gargiulos" or "Plaintiffs"), by and through their undersigned attorneys, for their Complaint against Defendant KeepSolid Inc. ("KeepSolid" or "Defendant"), allege as follows:

**NATURE OF ACTION**

1. Plaintiffs bring this complaint against Defendant for a Declaration from this Court that Plaintiffs have not violated the Anti-Cybersquatting Consumer Protection Act (ACPA), 15 U.S.C § 1125(d) and are the rightful registered name holders or registrants of the <VPNunlimited.com> domain name registration (the "Domain Name" or "Disputed

Domain"), which is the subject of a UDRP proceeding commenced by Defendant on October 5, 2020, captioned *Keepsolid Inc. v. Joseph C*, Case No. D2020-2441 (WIPO) (the "UDRP Proceeding").

## THE PARTIES

2.   Plaintiff Joseph C. Gargiulo is an individual residing and domiciled in Georgia, having an address at 378 Aldridge Avenue, Scottdale, GA 30079.

3.   Plaintiff Michael Gargiulo is an individual residing and domiciled in Georgia, having an address at 378 Aldridge Avenue, Scottdale, GA 30079.

4.   Upon information and belief, Defendant KeepSolid Inc. is a New York corporation with a principal place of business at 347 5th Ave Suite 1402-419, New York, NY 10016.

## JURISDICTION AND VENUE

5.   Pursuant to 28 U.S.C. §§ 2201(a) and 2202, Plaintiffs seek a declaration and judgment regarding their rights and obligations in an actual controversy within this Court's jurisdiction between the Gargiulos and Keepsolid concerning the Gargiulos' rights in and to the Domain Name.  Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1331, giving this Court original jurisdiction in a civil action raising a federal question, and 28 U.S.C. § 1338(a), giving this Court original and exclusive jurisdiction in a civil action arising under the trademark laws of the United States.

6.   This Court also has personal jurisdiction over Defendant because it is incorporated in this judicial district and has its principal place of business located within this judicial district.

## BACKGROUND

7. On November 6, 2017, the Disputed Domain was acquired by Virtual Private Network LLC, a company whose sole members were Plaintiffs Joseph C. Gargiulo and Michael Gargiulo.

8. The Gargiulos created Virtual Private Network LLC to operate the business at <VPN.com>, a website that assists consumers in the VPN or "virtual private network" market to find VPN providers that meet their specific needs.

9. VPN.com is also used for domain name brokerage services. Michael Gargiulo has brokered and sold over 600 domain names.

10. On or about January 2017, prior to acquiring the Disputed Domain, Virtual Private Network LLC invested over $1 million to acquire the VPN.com domain name. It was at that point that the Gargiulos began actively acquiring domain names with the generic "VPN" acronym.

11. The Gargiulo's own over 120 domain names that contain the "VPN" acronym (the listed registrant in the WHOIS, "KTunnel LLC," is a Georgia LLC of which Michael Gargiulo is the sole member). The majority of these domain names were registered the same week the Disputed Domain was acquired.

12. The following is a representative list of VPN formative domains the Gargiulos registered the first week of November 2017, when the Disputed Domain was acquired:

downloadvpnapp.com
fastestfreevpn.com
fastestvpnapp.com
fastestvpnunlimited.com
fastvpnapp.com
fastvpnapps.com

fastvpnunlimited.com

freevpnunlimited.com

unlimitedfastvpn.com

unlimitedvpnapps.com

vpncensorship.com

vpncontent.com

vpncryptocurrency.com

vpndoc.com

vpndownloader.com

vpneth.com

vpnfastapp.com

vpnlimited.com

vpnlogs.com

vpnmynet.com

vpnmywifi.com

vpnneutrality.com

vpnnewspaper.com

vpnspeeding.com

vpnspeedtesting.com

vpnstock.com

vpnunlimitedbandwidth.com

vpnunlimiteddownload.com

vpnunlimitedfree.com

vpnunlimitedlogs.com

vpnunlimitedspeed.com

vpnunlimitedtrial.com

vpnwax.com

855vpnfast.com

vpn855.com

vpnapk.com

vpnbenefits.com

vpnbrowsing.com

vpncareer.com

vpncommerce.com

vpndefinition.com

vpndomains.com

vpndonate.com

vpnextension.com

vpnfail.com

vpnfbi.com

vpnfeature.com

vpnfiber.com

vpnfreedoms.com

vpnhealth.com

vpnhttps.com

vpnidentity.com

vpnidentitytheft.com

vpnillegal.com

vpnindustry.com

vpnlegal.com

vpnlicense.com

vpnlocations.com

vpnmeaning.com

vpnmoney.com

vpnmonth.com

vpnoperatingsystem.com

vpnpolice.com

vpnpolicy.com

vpnpricing.com

vpnpromos.com

vpnpurchase.com

vpnretail.com

vpnsdk.com

vpnsignin.com

vpntrademark.com

vpntravel.com

vpnuselegal.com

vpnusername.com

vpnverified.com

vpnvolunteer.com

vpnwar.com

vpnwebstore.com

vpnyear.com

13. Of the 80 plus domain names listed above, 11 contain the generic acronym VPN combined with the descriptive term "unlimited" and another generic term – and 1 combines VPN with the word, "limited."

14. The Gargiulos acquired the Disputed Domain, along with a dozen VPN and "unlimited/limited" domains, because they contained the VPN acronym with a common descriptor – not to target any trademark that Defendant may claim rights to.

15. In the UDRP Proceeding, Defendant claimed trademark rights to the wording "VPN Unlimited" and ownership of U.S. Trademark Registration No. 5930238 for the wording VPN UNLIMITED and U.S. Trademark Registration No. 5958751 for the wording KEEPSOLID VPN UNLIMITED, both covering "Providing virtual private network (VPN) services, namely, private and secure electronic communications over a private or public computer network" in Class 38 ("Defendant's Trademark Registrations").

16. At the time the Gargiulo's acquired the Disputed Domain in November 2017, the applications for Defendant's Trademark Registrations had not even been filed. The trademark applications were both filed on October 30, 2018 – nearly 1 year *after* the Gargiulos acquired the Disputed Domain.

17. On information and belief, Defendant does not own common law trademark rights that predate Respondent's acquisition of the Disputed Domain.

18. On information and belief, Defendant has not acquired distinctiveness in the term UNLIMITED as claimed in Defendant's Trademark Registrations.

19. Prior to acquiring the Disputed Domain, the Garguilos conducted a search of the USPTO database. There were no active registrations or approved applications for "VPN UNLIMITED," and no filings by KeepSolid for any VPN UNLIMITED mark.

20. The Disputed Domain is composed of the dictionary words "VPN" and "unlimited," wording that is generic (VPN) and merely descriptive ("unlimited").

21. "Unlimited" plans are common with certain types of services, such as phone plans, data plans, and VPN plans. As might be expected, companies in the VPN industry commonly use the acronym "VPN" and the word "unlimited" in their dictionary meaning to describe the products and services being offered. See, for example:

https://apps.apple.com/us/app/vpn-super-unlimited-proxy/id1370293473
https://www.purevpn.com/features/unlimited-bandwidth
https://www.expressvpn.com/features/unlimited-vpn-bandwidth
https://www.androidcentral.com/do-you-need-vpn-unlimited-bandwidth
https://apps.apple.com/us/app/touch-vpn-unlimited-proxy/id991744383
https://play.google.com/store/apps/details?id=com.vpn.powervpn2&hl=en_US&gl=US
https://play.google.com/store/apps/details?id=com.vpn.lat&hl=en_US&gl=US
https://play.google.com/store/apps/details?id=com.vpn.kmvpn11
https://play.google.com/store/apps/details?id=free.vpn.unblock.proxy.vpnmonster&hl=en_US

https://play.google.com/store/apps/details?id=com.fvcorp.flyclient&hl=en_US&gl=US

22. Defendant's own website marketing uses the wording VPN UNLIMITED in a merely descriptive manner to inform consumers that it offers "VPNs" with "unlimited" access to web content.

23. Consumers do not associate the wording "VPN UNLIMITED" exclusively with Defendant. Defendant's website at <keepsolid.com> shows that Defendant, KeepSolid Inc., is, not surprisingly, known as "KeepSolid." Defendant's current "KeepSolid.com" website displays a link to "KeepSolid VPN Unlimited," which leads to the following website: https://www.vpnunlimitedapp.com/. The banner at the top of Defendant's website, located at https://www.vpnunlimitedapp.com/, currently displays the words "VPN UNLIMITED," prefaced by "KEEPSOLID," in order to inform consumers that KeepSolid is the source. The banner showing "KeepSolid VPN Unlimited" appears at the top of every page within the website.

24. The fact that Defendant registered the trademarks with an acquired distinctiveness claim based on 5 years of alleged use does not necessarily establish when Defendant first had trademark rights in VPN UNLIMITED. The complaint in the UDRP Proceeding does not even assert that its alleged trademarks acquired distinctiveness, much less when.

25. Plaintiffs acquired the Disputed Domain for a legitimate reason in good faith.

26. As noted, VPN.com also offers domain name brokerage services. VPN.com has brokered over $1 million in deals each of the past 3 years. Michael Gargiulo owns over 1,400 domain names and has bought, sold and brokered millions of dollars in domain transactions prior to his founding of VPN.com. All of the VPN domain names listed above, including the Disputed Domain and the <VPN.com> domain, have intrinsic value

because they are short and/or combine VPN with a descriptor. They also all relate to VPN.com's core business.

27. KeepSolid initially contacted Virtual Private Network LLC multiple times about white labeling its VPN service. During these conversations, the Disputed Domain came up, and KeepSolid asked if Virtual Private Network LLC would be willing to sell it. Plaintiff Michael Gargiulo and individuals named "Vasily" and "Igor" from Defendant KeepSolid began negotiating the sale of the Domain Name.

28. Michael Gargiulo offered to sell the Domain Name at the fair and discounted amount of $26,000 as a courtesy from one VPN company to another and in his capacity as a domain name investor and broker. When the Gargiulos acquired the Disputed Domain in 2017, the price quoted by Uniregistry – the broker for the then-seller – was $23,000. If Plaintiffs were engaged in a scheme to target Defendant's trademark, as alleged in the UDRP complaint, Michael Gargiulo would have demanded an exorbitant amount or set a clearly abusive price – not virtually the same price quoted by Uniregistry three years prior.

29. Michael Gargiulo made the offer in response to Defendant's stated interest. He did not acquire the Disputed Domain to target Defendant, as alleged in the UDRP Proceeding; however, as a domain investor and broker, he was willing to part with it at market value. He acquired the Disputed Domain in good faith and in furtherance of his business in the VPN industry and his practice of purchasing inherently valuable, VPN formative domain names with a descriptor, which is unequivocally a legitimate purpose.

30. Plaintiffs' rights to the Disputed Domain date back to its November 2012 creation date, which predate any rights Defendant may have to a VPN UNLIMITED mark. The

Disputed Domain was used by its prior owners in connection with a VPN service *before* KeepSolid alleges to have adopted the VPN UNLIMITED and KEEPSOLID VPN UNLIMITED marks.

31.     Plaintiffs acquired the Disputed Domain *before* Defendant's Trademark Registrations were filed and before any alleged VPN UNLIMITED mark would have acquired distinctiveness based on a claim of 5 years of use, which assuming *arguendo* such claim is accurate and legitimate in this case would mean that the mark acquired distinctiveness in the year 2018, *after* the Gargiulos acquired the Disputed Domain.

32.     KeepSolid did not adopt VPN UNLIMITED as a trademark or even offer VPN services in 2013 at the time that it claims in its registrations to have made a first use in commerce of the mark.  Plaintiffs were unaware of any such trademark use at the time that they acquired the Disputed Domain.

33.     The fact that Plaintiffs and Defendant negotiated a possible transfer of the Disputed Domain after the Plaintiffs acquired the descriptive domain in good faith and *prior* to the Defendant acquiring any registered trademark rights, anywhere in the world, does not violate the UDRP as alleged in the UDRP Proceeding.

34.     Offering common word domain names for sale is a legitimate business practice, much like investing in land is a legitimate business practice.  Few people would question the concept of selling valuable land for greater than its purchase price.  In the absence of any conceivable trademark violation, there is absolutely no basis for Defendants' claims of bad faith registration.

## COUNT I:
## CLAIM FOR DECLARATORY RELIEF

35. Plaintiffs repeat and reallege paragraphs 1 through 34 of this Complaint, which are incorporated herein.

36. The wording "VPN" and "unlimited" are common, dictionary words.

37. Numerous third parties offer goods and services under variants of the phrase, "VPN Unlimited" and "Unlimited VPN."

38. A person may register a generic or common word or phrase as a domain name on a first come, first served basis, as a general rule.

39. Plaintiffs acquired the Domain Name in good faith, for use in their VPN business at <VPN.com>.

40. Defendant first approached the Gargiulos about white labelling their VPN service. Defendant later stated its interest in acquiring the Disputed Domain.

41. Defendant does not own exclusive rights to the wording, "VPN Unlimited," in all context, for any and all uses, in the United States.

42. Defendant initiated the UDRP Proceeding, claiming that the Domain Name was registered and used in bad faith.

43. The Policy provides that a party to a UDRP proceeding may commence an independent action in Court, at any time, seeking a *de novo* adjudication.

44. A justiciable controversy exists between Plaintiffs and Defendant.

45. To resolve this actual controversy, Plaintiffs seek a declaration and judgment that their registration and use of the Domain Name is a valid use.

46. Defendant's conduct has harmed and will continue to harm Plaintiffs, thereby entitling Plaintiffs to recover attorney's fees and costs.

WHEREFORE, Plaintiffs respectfully request judgment against Defendant as follows:

A.   Declaration by the Court that Defendant has no trademark rights that are subject to protection in the United States;

B.   Declaration by the Court that, pursuant to 15 U.S.C. § 1114(2)(D)(iv)-(v), Plaintiffs are entitled to registration, ownership and use of the Domain Name;

C.   Declaration by the Court that, pursuant to 28 U.S.C. § 2201, Plaintiffs' registration of the Domain Name is lawful and does not infringe on any trade or service mark right the Defendant may claim in the United States;

D.   A Judgment that Defendant has knowingly and materially misrepresented that the Domain Name is identical or confusingly similar to a mark in which Defendant has rights;

E.   An Order by the Court, pursuant to 15 U.S.C. § 1119, cancelling Defendant's Trademark Registrations;

F.   Costs and expenses, including costs under 15 U.S.C. § 1114(2)(D)(iv)-(v) and reasonable attorneys' fees; and

G.   For such other and further relief as this Court deems just and proper.

Dated:   Brooklyn, New York
         November 19, 2020

LEWIS & LIN, LLC

By: _/s/ Brett Lewis_____
Brett Lewis, Esq.
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
Email: brett@iLawco.com

*Counsel for Plaintiffs*